# United States Court of Appeals for the Federal Circuit

---

**BIOGEN MA, INC.,**
*Plaintiff-Appellant*

**v.**

**JAPANESE FOUNDATION FOR CANCER RESEARCH, BAYER PHARMA AG,**
*Defendants-Appellees*

---

2014-1525

---

Appeal from the United States District Court for the District of Massachusetts in No. 1:13-cv-13061-FDS, Judge F. Dennis Saylor IV.

---

Decided: May 7, 2015

---

EDWARD ANTHONY FIGG, Rothwell, Figg, Ernst & Manbeck, P.C., Washington, DC, argued for plaintiff-appellant. Also represented by DANIEL MCCALLUM, ROBERT DANNY HUNTINGTON, SETH EDWARD COCKRUM; CLAIRE LAPORTE, DONALD ROSS WARE, Foley Hoag LLP, Boston, MA.

S. CALVIN WALDEN, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, argued for defendant-appellee

Japanese Foundation for Cancer Research. Also represented by BRITTANY BLUEITT AMADI, Washington, DC; NELS LIPPERT, Tarter Krinsky & Drogin LLP, New York, NY; PAULA JOANNE ESTRADA DE MARTIN, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, New Orleans, LA.

DAVID I. BERL, Williams & Connolly LLP, Washington, DC, argued for defendant-appellee Bayer Pharma AG. Also represented by THOMAS S. FLETCHER, DAVID M. KRINSKY, BRUCE GENDERSON.

———————————

Before DYK, SCHALL, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Biogen MA, Inc. ("Biogen") brought suit in district court, pursuant to 35 U.S.C. § 146, to challenge an interference decision by the Patent Trial and Appeal Board ("PTAB" or the "Board"). The Board concluded that patent applicant Walter Fiers was estopped from establishing priority in Interference No. 105,939 (the "'939 interference" or the "third interference") because he had lost two prior interferences covering the same subject matter. The district court held that it lacked subject matter jurisdiction because the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011) ("AIA"), eliminated district court jurisdiction under 35 U.S.C. § 146 with respect to interferences commenced after September 15, 2012. The district court transferred this case to this court pursuant to 28 U.S.C. § 1631.

We conclude that we have jurisdiction to consider the district court's jurisdiction; that the district court correctly decided that it lacked jurisdiction under 35 U.S.C. § 146; and that the Board's priority decision was not erroneous. We affirm the Board's decision.

BACKGROUND

Beginning in 1983, a series of interferences were declared between Fiers and Haruo Sugano, Masami Muramatsu, and Tadatsugu Taniguchi (collectively, "Sugano") generally relating to claims to DNA sequences that encode the precursor and/or mature forms of human fibroblast interferon ("hFIF") proteins, which promote viral resistance in human tissue, *see Fiers v. Revel*, 984 F.2d 1164, 1165 (Fed. Cir. 1993), and in the case of the most recent interference, to claims for the proteins themselves. All of Fiers' applications claimed priority to United Kingdom Patent Application No. GB 8011306, filed on April 3, 1980, while Sugano's applications and patents claimed priority to Japanese Patent Application No. 33931/80, filed on March 19, 1980 (the "Japanese Application").

The first, Interference No. 101,096 (the "'096 interference" or the "first interference"), declared August 30, 1983, was between Sugano's U.S. Patent Application No. 06/201,359 and Fiers' U.S. Patent Application No. 06/250,609. The count was directed to the DNA sequences coding for hFIF proteins. Fiers moved to add counts directed to hFIF proteins, but this motion was denied. On June 5, 1991, the Board of Patent Appeals and Interferences ("BPAI" or the "Board") awarded priority to Sugano. We affirmed. *See Fiers*, 984 F.2d at 1172.

The second, Interference No. 105,661 (the "'661 interference" or the "second interference"), declared March 4, 2009, was between Sugano's U.S. Patent Nos. 5,236,859 and 5,514,567 and Fiers' Application No. 08/471,646. The count was directed to the DNA sequence encoding the mature hFIF proteins, and the Board ordered Fiers to show cause why the interference should continue given that its subject matter was the same as in the first interference. On August 4, 2009, the Board found that Fiers

failed to discharge his burden, entering judgment in favor of Sugano. Fiers did not appeal that decision.

Finally, on July 16, 2013, the Board declared the '939 interference between Fiers' U.S. Patent Application No. 08/253,843 (the "Fiers '843 application"), filed on June 3, 1994, and Sugano's U.S. Patent Application No. 08/463,757 (the "Sugano '757 application"), filed on June 5, 1995. The counts were directed to precursor and mature hFIF proteins. Biogen owns the Fiers '843 application. The Japanese Foundation for Cancer Research ("JFC") owns the Sugano '757 application.[1] The specifications of the patent applications in the '939 interference are largely the same as the specifications of the applications or patents in the prior two interferences.

On July 16, 2013, the Board again ordered Fiers to show cause as to why Fiers should not be estopped from proceeding, given that Fiers lost the prior interferences and the subject matter was again the same as in the prior interferences.

In its response to the order, Fiers argued against applying to the interference two forms of interference estoppel: estoppel by judgment and estoppel for failure to file a motion. Fiers argued that estoppel by judgment did not apply because his claims to hFIF proteins are patentably distinct from the DNA sequences encoding those proteins (the subject matter of the earlier interferences). Fiers submitted several pieces of purported evidence to support his argument. Fiers also argued that estoppel for failure to file a motion did not apply because Fiers had moved in prior interferences to add counts reciting hFIF

---

[1]    Bayer Pharma AG is a party to this case because it is a successor to an exclusive license agreement with the JFC.

proteins, and had been barred from doing so by the Board.

Sugano responded that Fiers was properly estopped from pursuing the hFIF protein claims because he had failed to submit sufficient evidence to show that the protein claims were patentably distinct from the lost counts, and that Fiers' failure in its prior motions to follow the Board's procedural rules, as well as its failure to petition for review, also resulted in estoppel.

The Board agreed with Sugano and held that estoppel applied. The Board concluded that Fiers failed to discharge his burden to show patentable distinctness and that Fiers was estopped from continuing the interference by reason of the two earlier interference proceedings. The Board entered judgment in favor of Sugano on October 3, 2013.

On December 2, 2013, Biogen filed a civil action in district court under pre-AIA 35 U.S.C. § 146 to set aside the Board's determination. JFC moved to dismiss the case for lack of subject matter jurisdiction. On May 22, 2014, the district court granted the motion to dismiss, holding that the AIA had eliminated § 146 jurisdiction to review interferences, such as the one here, that were filed after September 15, 2012. The district court transferred the case to this court pursuant to 28 U.S.C. § 1631 so that we could review the Board's decision under pre-AIA 35 U.S.C. § 141.

DISCUSSION

I

A threshold issue is whether we have jurisdiction to determine the correctness of the district court's determination that it lacked subject matter jurisdiction under pre-AIA 35 U.S.C. § 146. JFC contends that the district court's determination that it lacked jurisdiction under § 146 is not reviewable.

In *In re Teles AG Informationstechnologien*, 747 F.3d 1357 (Fed. Cir. 2014), we concluded that we had jurisdiction in a case virtually indistinguishable in principle from this case. In *Teles*, the district court dismissed a patentee's action brought under 35 U.S.C. § 145 to review a Board ex parte reexamination decision for lack of subject matter jurisdiction. The district court then transferred the case to this court pursuant to § 1631. We held that the dismissal was improper and that the district court should have only transferred the case. *Teles*, 747 F.3d at 1359–61. Treating the case as though it had been properly transferred, we then proceeded to address the question of the district court's jurisdiction under 35 U.S.C. § 145 and the question of statutory interpretation underlying that issue under a de novo standard. *See id.* at 1361. We held that amendments to the patent statute had eliminated district court review of actions under 35 U.S.C. § 145 for patent owners (as opposed to applicants) and "affirm[ed] that the district court lacked jurisdiction over the § 145 action." *Id.* at 1366.

Since we did not explicitly discuss the basis for adjudicating the district court's jurisdiction in *Teles*, we find it appropriate to do so here. It is well-established that transfer orders are generally not appealable. *See Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 47 (1st Cir. 2006) ("[E]very court of appeals to have confronted [the issue] has concluded that section 1631 transfer orders are not immediately appealable.").[2] We have not been asked, however, to sit in appellate review of the district court's transfer order. We are instead the transferee court, and Biogen, despite its having styled its request as a "remand," is effectively asking us to retransfer this case to

---

[2]   There is a limited exception for transfers to the Court of Federal Claims. *See* 28 U.S.C. § 1292(d)(4).

the district court because the district court had jurisdiction under pre-AIA § 146 and we do not have jurisdiction under pre-AIA § 141. *See* 28 U.S.C. § 1631.

It is undisputed that we have "inherent jurisdiction to determine [our] own jurisdiction." *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877 (Fed. Cir. 1983) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)). In this context, Congress has provided two mutually exclusive avenues of review under § 146 and § 141, so the question of our jurisdiction and the district court's jurisdiction are different sides of the same coin. If the district court lacked jurisdiction under § 146, we have jurisdiction under § 141 (as a result of the transfer), and if the district court court had jurisdiction under § 146, we lack jurisdiction under § 141. This latter proposition requires some explanation.

Courts have repeatedly held in the context of § 141[3]

---

[3]    Section 141 provided in relevant part:

A party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference may appeal the decision to the United States Court of Appeals for the Federal Circuit, but such appeal shall be dismissed if any adverse party to such interference, within twenty days after the appellant has filed notice of appeal in accordance with section 142 of this title, files notice with the Director that the party elects to have all further proceedings conducted as provided in section 146 of this title. If the appellant does not, within thirty days after filing of such notice by the adverse party, file a civil action under section 146, the decision appealed

and § 146,[4] and their predecessor statutes, that Congress provided "alternative paths for judicial review of an interference decision of the Board." *AbbVie Deutschland GmbH v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1296 (Fed. Cir. 2014). As the Supreme Court explained in *Hoover Co. v. Coe*, 325 U.S. 79 (1945), "[i]t is evident that alternative rights of review are accorded an applicant—one by appeal to the United States Court of Customs and Patent Appeals, the other by bill in equity filed in one of the federal district courts." 325 U.S. at 83. The Court thoroughly reviewed the legislative history of the patent acts since 1836, which revealed continued maintenance of alternative paths of review. *See id.* at 84–87. The Court held that in 1927, "Congress decided . . . to allow an applicant 'to have the decision of the Patent Office reviewed either by the court of appeals or by filing a bill in equity, *but not both*.'" *Id.* at 87 (emphasis added) (quoting S. Rep. No. 1313, at 4 (1927)); *see also* P.J. Federico, *Commentary on*

---

from shall govern the further proceedings in the case.

35 U.S.C. § 141 (2006). Unless otherwise specified, we refer to the pre-AIA versions of both § 141 and § 146.

[4]    Section 146 provided in relevant part:

Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided.

35 U.S.C. § 146 (2006).

*the New Patent Act*, reprinted in 75 J. Pat. & Trademark Off. Soc'y 161, 199 (1993) (explaining that "[d]ecisions of the Patent Office in refusing to grant patents, and in interferences, are reviewable by the courts in either of two ways" and that "since 1927 they have been mutually exclusive").

Our predecessor court and other circuits have been uniform in treating § 141 and § 146 or their predecessors as mutually exclusive alternative paths of review that parties irrevocably elect. In general, if a party elects one path of review (§ 141 or § 146), the other is waived.[5] *See Hofstein v. Silver*, 201 U.S.P.Q. 77, 79 (CCPA 1979) (explaining that the "clear import of the statute is to allow a dissatisfied party the option of either seeking review in this court or filing a civil action, but not both" and that choosing one path would be an "irrevocable election"); *In re Isler*, 152 F.2d 1002, 1004 (CCPA 1946) (noting that the predecessor statutes to §§ 141 and 146 are "alternative

---

[5]    The statute was explicit about the waiver in several respects. Section 146 stated that a party has a remedy in district court "unless" he has appealed in the Federal Circuit, 35 U.S.C. § 146 (2006), and § 141 stated that an applicant may appeal a BPAI decision under § 134, but "[b]y filing such an appeal the applicant waives his or her right to proceed under section 145 of this title," 35 U.S.C. § 141 (2006).

However, § 141 provided for one limited exception to the rule that the patentee's informed election governs: an "appeal shall be dismissed if any adverse party to such interference, within twenty days after the appellant has filed notice of appeal . . . , files notice with the Director that the party elects to have all further proceedings conducted as provided in section 146 of this title." 35 U.S.C. § 141 (2006).

and mutually exclusive" (quoting *Hemphill Co. v. Coe*, 121 F.2d 897, 898 (D.C. Cir. 1941))); *Cleveland Trust Co. v. Berry*, 99 F.2d 517, 521 (6th Cir. 1938) (noting that an appellant "could not be deprived of its right to file a bill in equity except by its own election to appeal to the [appellate court]"); *Jensen v. Lorenz*, 92 F.2d 992, 994–95 (D.C. Cir. 1937) ("It is evident that Congress intended to require an election by the party as between the two remedies offered to him . . . and that when such election is made by the litigant it is to be final."); *Bakelite Corp. v. Nat'l Aniline & Chem. Co.*, 83 F.2d 176, 177 (2d Cir. 1936) (noting it "cannot be doubted" the statutes provide alternative remedies); *Walther v. Vanderveer*, 64 F.2d 540, 541 (CCPA 1933) (holding that because parties "elected" to bring the case to the appellate court in the first instance, the appeal could not then be dismissed just to confer jurisdiction upon the district court to determine the issues).

Thus, an election of § 146 review would foreclose § 141 review in this court and deprive us of jurisdiction.[6] But of course, this is true only if § 146 review were available, since, in general, "an election will be found only if a party has chosen to pursue one position that is inconsistent with another possible position . . . ." 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4476 (2d ed. 2002).

In short, we have jurisdiction under § 141 as a result

---

[6]  Section 145, the section we interpreted in *Teles*, is similar. *See Hyatt v. Kappos*, 625 F.3d 1320, 1321 n.2 (Fed. Cir. 2010) (en banc) (noting that sections 145 and 146 are "parallel provisions"). The predecessor statute to § 146, Revised Statute 4915, is the same one as the predecessor to § 145. *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1698–99 (2012).

of the transfer if § 146 review was unavailable, but we lack jurisdiction if this case was properly brought to the district court under § 146. We thus must determine if the district court indeed lacked jurisdiction under § 146 in order to determine whether we lack jurisdiction and should retransfer the case.

Contrary to what JFC argues, the Supreme Court's decision in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), is not to the contrary. In *Christianson*, the Court held that, in order to avoid a "perpetual game of jurisdictional ping pong" of transfers and retransfers, a court of appeals should defer to another court of appeal's transfer order under § 1631 unless the transferee court considers the transfer "clearly erroneous." *Id.* at 818–19. "[I]f the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Id.* at 819. *Christianson* thus recognized that the transferee court has the authority to determine its own jurisdiction, and only stands for the proposition that courts ought to "apply law-of-the-case principles to transfer decisions of *coordinate courts*." *Id.* at 816 (emphasis added). *Christianson* does not suggest that a court of appeals should defer to a non-coordinate district court on a jurisdictional issue. Such deference would be particularly odd here since we would have appellate jurisdiction if the district court had determined that it did have jurisdiction. *See Trayco, Inc. v. United States*, 994 F.2d 832, 835 (Fed. Cir. 1993). If we can determine that a district court erred in accepting jurisdiction, it follows that we can equally review the district court's determination that it lacked jurisdiction.

## II

We turn now to the question of whether pre-AIA § 146 conferred jurisdiction on the district court in this case. That depends on whether the AIA, enacted on September

16, 2011, eliminated the district court's § 146 jurisdiction to review decisions from interference proceedings declared after September 15, 2012. Ultimately, we conclude that specific statutory provisions in the AIA as amended[7] govern the availability of § 146 review for interferences declared after September 15, 2012, and that for interferences declared after that date, § 146 review is not available.

The AIA changed the patent system, among other things, from a first-to-invent to a first-inventor-to-file regime for determining patent priority. *See* AIA § 3; *Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*, 756 F.3d 1366, 1368 (Fed. Cir. 2014). In doing so, it amended the patent statute's central provisions on patentability, including 35 U.S.C. §§ 102–103, AIA § 3(a)–(c); established derivation proceedings and eliminated interference proceedings, AIA § 3(i)–(j); and changed the BPAI to the PTAB, AIA §§ 3(j), 7(a). This case concerns the effective date of these provisions as to interferences.

In interpreting a statute, we start with the statute's language. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Unfortunately, the effective date provisions in the AIA are far from a model of clarity. In general, the statute contains a hodgepodge of express reservations of pre-AIA provisions, *see* AIA § 6(c)(2)(C) (pre-AIA provisions regarding inter partes reexamination "shall continue to apply to requests for [certain] inter partes reexamination[s]"); implicit reservations, *see* AIA § 18(a)(1)(C) (mentioning a petitioner who challenges a patent in a covered business method proceeding on a ground raised under pre-AIA §§ 102, 103); TCA § 1(k)(3)

---

[7]    The AIA was amended by the Leahy-Smith America Invents Technical Corrections Act, Pub. L. No. 112–274, 126 Stat. 2456 (2013) ("TCA").

(mentioning interferences declared under pre-AIA § 135); and sometimes simply silence, *see* AIA § 3 (amending but saying nothing about preserving pre-AIA §§ 102, 103).

Here, Biogen argues that AIA § 3(n)(1) makes the new AIA provisions applicable only to new applications and implicitly preserves interference proceedings and judicial review provisions concerning interference proceedings for patent applications filed before March 16, 2013, including § 146 review for Board decisions in interferences. JFC, on the other hand, apparently argues that § 3(n)(1) provides that the new AIA provisions shall apply not only to new applications but also to old applications pending on March 16, 2013. We think JFC's interpretation in this respect is untenable since it is clear from the structure of the statute that new provisions cannot be applied in their entirety to old applications. *See Tobinick v. Olmarker*, 753 F.3d 1220, 1223 n.1 (Fed. Cir. 2014) (explaining that pre-AIA law applies generally to old interferences). Indeed, JFC agrees that pre-AIA law generally applies to interferences before the PTO. While we thus construe § 3(n)(1) as applying the new AIA provisions only to new applications, it does not follow that § 3(n)(1) requires application of pre-AIA judicial review provisions to old applications.

Section § 3(n)(1) provides:

(1) IN GENERAL.—Except as otherwise provided in this section, the amendments made by this section shall take effect upon the expiration of the 18-month period beginning on the date of the enactment of this Act [i.e., March 16, 2013], and shall apply to any application for patent, and to any patent issuing thereon, that contains or contained at any time—

(A) a claim to a claimed invention that has an effective filing date as defined in section 100(i) of title 35, United States Code, that is on or after

the effective date described in this paragraph; or

> (B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

This provision on its face is silent as to whether interference proceedings and judicial review of these proceedings continues with respect to patent applications filed prior to March 16, 2013. That silence, says Biogen, means that the old interference provisions, including § 146 review, continue to apply to previously-filed patent applications.

It is certainly true, as we have noted above and as the parties agree, that under AIA § 3(n)(1) interference proceedings are to continue with respect to previously-filed patent applications, that is, applications filed before March 16, 2013.[8] But we think Congress specifically addressed the manner of judicial review of Board deci-

---

[8]    One exception is § 6(f)(3)(A), which provides that the Director may dismiss a pending interference in favor of a post-grant review. *See* AIA § 6(f)(3)(A).

Continuance of interference proceedings is also apparent from § 3(n)(2), which provides that pre-AIA interference provisions § 102(g), § 135, and § 291 continue to apply to patent applications with claims with "mixed" filing dates, i.e., applications with claims with filing dates before March 16, 2013, and claims with filing dates after March 15, 2013. *See* AIA § 3(n)(2). Section 3(n)(2) does not, however, provide for judicial review of such interferences. Nor, as Biogen points out, was the district court correct in concluding that § 3(n)(2), which in fact only deals with patent applications with mixed filing dates, "provides the basis for the PTAB to continue to declare interferences." Appellant's Br. at 22 n.9.

sions in continuing interference proceedings and that the specific provisions with respect to judicial review trump any general rule of survivorship that could be inferred from § 3(n)(1).

In the AIA, Congress included § 6(f)(3)(C), which provides:

> (C) APPEALS.—The authorization to appeal or have remedy from derivation proceedings in sections 141(d) and 146 of title 35, United States Code, as amended by this Act, and the jurisdiction to entertain appeals from derivation proceedings in section 1295(a)(4)(A) of title 28, United States Code, as amended by this Act, shall be deemed to extend to any final decision in an interference that is commenced before the effective date set forth in paragraph (2)(A) of this subsection [i.e., September 16, 2012] and that is not dismissed pursuant to this paragraph.

This section provides that amended § 146 (which now authorizes review only of derivation proceedings) shall be "deemed" to provide review of interferences declared before September 16, 2012.[9] The section does not, however, explicitly provide for judicial review for interferences declared *after* September 15, 2012.

Congress corrected this omission in TCA § 1(k)(3). It provides:

> (3) REVIEW OF INTERFERENCE DECISIONS.—The provisions of sections 6 and 141 of title 35, United

---

[9]    Section 6(f)(3)(B) also provides that the PTAB shall be "deem[ed]" the BPAI for purposes of conducting "any further proceedings in [such] interference[s]." AIA § 6(f)(3)(B).

> States Code, and section 1295(a)(4)(A) of title 28, United States Code, as in effect on September 15, 2012, shall apply to interference proceedings that are declared after September 15, 2012, under section 135 of title 35, United States Code, as in effect before the effective date under section 3(n) of the Leahy-Smith America Invents Act. The Patent Trial and Appeal Board may be deemed to be the Board of Patent Appeals and Interferences for purposes of such interference proceedings.

For interferences declared after September 15, 2012, this provision explicitly authorizes pre-AIA § 141 review, but unlike AIA § 6(f)(c)(3), does not authorize pre-AIA § 146 review. Therefore, AIA § 6(f)(3)(C) and TCA § 1(k)(3) together make clear that pre-AIA § 146 review was eliminated for interference proceedings declared after September 15, 2012.

The specific provisions in § 6(f)(3)(C) and § 1(k)(3) require us to apply the basic tenet of statutory interpretation that the specific governs the general. As the Supreme Court said in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012), it is "a commonplace of statutory construction that the specific governs the general," especially where Congress "has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* at 2071 (internal quotation marks and citations omitted). This principle equally applies when it comes to interpreting effective date provisions. For instance, in *Gozlon-Peretz v. United States*, 498 U.S. 395 (1991), the Supreme Court interpreted a specific provision in the Anti-Drug Abuse Act of 1986 governing supervised release. The petitioner had argued that the effective date of that specific provision should be delayed pursuant to a more general effective date provision in a different section of the statute. *Id.* at 406. Rejecting that argument, the Court noted that a "specific

provision controls over one of more general application." *Id.* at 407 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

Here, even if the general effective date provision in § 3(n)(1) suggests that in general Congress preserved pre-AIA provisions for pre-March 16, 2013, patent applications, it does not follow that we should myopically apply § 3(n)(1) independently of the specific provisions in AIA § 6(f)(3)(C) and § 1(k)(3). Here, Congress "deliberately targeted specific problems with specific solutions," *RadLAX*, 132 S. Ct. at 2071, so we cannot ignore them. Nor does the legislative history of the AIA suggest otherwise. While Senator Kyl recognized "the continuing need to allow appeals of *pending* interferences," 157 Cong. Rec. 1377 (2011) (emphasis added), the legislative history is silent about the specific question of what pre-AIA review was available for interference proceedings declared *after* September 15, 2012. The regulations and commentary of the Patent and Trademark Office ("PTO") that Biogen cites are equally unhelpful. They do not say that § 146 review is available for interferences commenced after September 15, 2012. *See* 77 Fed. Reg. 48,612, 48,625 (Aug. 14, 2012) ("*[C]ertain* interferences may be deemed to be eligible for judicial review as though they were derivation proceedings." (emphasis added));[10] 37 C.F.R. § 90.1 ("*[W]here available*, judicial review of decisions arising out

---

[10]    The commentary also states that AIA § 3 "makes review of interference decisions by a District Court under 35 U.S.C. [§] 146 available only if the provisions of § 3(n)(1) . . . are not satisfied." 77 Fed. Reg. 6,879, 6,891 (Feb. 9, 2012). It is difficult to parse this particular comment, but it certainly does not clearly state § 146 review remains available for interferences commenced after September 15, 2012.

of interferences declared pursuant to 35 U.S.C. [§] 135 continue to be governed by the pertinent regulations . . . ." (emphasis added)). In any case, the PTO's regulations interpreting the scope of the district court's subject matter jurisdiction would not be entitled to *Chevron* deference. *See Love v. Thomas*, 858 F.2d 1347, 1352 n.9 (9th Cir. 1988) (*Chevron* "deference does not extend to the question of judicial review, a matter within the particular expertise of the courts").

We must accordingly follow the express provisions in the statute. Biogen's other convoluted efforts to argue that Congress' specific approach should not govern require no further discussion.

In short, because the AIA and its technical corrections provided that only pre-AIA § 141 review in this court would be available for interferences declared after September 15, 2012, and the '939 interference here was declared July 16, 2013, the district court properly found that it lacked subject matter jurisdiction. It follows that we have jurisdiction to hear Biogen's appeal pursuant to § 141.

## III

We now turn to the merits of Biogen's appeal of the Board's judgment against Fiers in the '939 interference. The Board's judgment was based on Fiers' failure to meet his burden in responding to the July 16, 2013, order to show cause why Fiers should not be estopped from continuing with the interference, given that he had lost two prior interferences.

Interference estoppel "by judgment" applies where "a losing party in a previous interference between the same parties" tries to patent a claim "not patentably distinct from the counts in issue in that [prior] interference." *Woods v. Tsuchiya*, 754 F.2d 1571, 1579 (Fed. Cir. 1985);

*see also In re Deckler*, 977 F.2d 1449, 1452 (Fed. Cir. 1992) (holding that a losing priority judgment in an interference proceeding bars the loser from obtaining a patent containing claims that are patentably indistinguishable from the claims corresponding to the lost count); MPEP § 2308.03 (9th ed. March 2014) (interference estoppel applies where a "losing party is barred on the merits from seeking a claim that would have been anticipated or rendered obvious by the subject matter of the lost count").

The parties do not dispute that estoppel by judgment, if applicable, is itself sufficient to estop Fiers from continuing the interference even if Fiers' motion to add protein counts to the earlier interferences failed.[11] Estoppel by

---

[11] That unsuccessful efforts to add a count do not prevent estoppel by judgment is clear from *Stoudt v. Guggenheim*, 651 F.2d 760 (CCPA 1981), a case on which Biogen relies. As the court in *Stoudt* explained: "Where the prior judgment between the same parties is not strictly res judicata because it resolves a different and distinct issue [e.g., a patentably distinct count], that judgment may nonetheless create an estoppel as to matters actually in issue or points controverted." *Id.* at 764 (bracketed content in original). The court treated estoppel by judgment and estoppel for failure to file a motion separately, holding that neither applied in that case:

> We agree with the board's adoption of the examiner's ex parte determination that the present count is patentably distinct from [the count in] the previous interference. No identity of issues is therefore present in the two interferences and the doctrine of res judicata is inapplicable.

judgment rests on the principle that a "judgment in an action precludes relitigation of claims or issues that were . . . raised in [the earlier] proceeding." *In re Deckler*, 977 F.2d at 1452. This is "an application of settled principles of res judicata," *id.*, under which "a final judgment on the merits of an action precludes . . . relitigating issues." *San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323, 336 n.16 (2005). Claims that are not patentably distinct from lost counts were already adjudicated in the prior interference and are thus conclusive. Even if Fiers' filing of the motion to add the protein count would suffice to avoid other forms of estoppel, it is irrelevant to estoppel by judgment. *See* Restatement (Second) of Judgments, § 26 cmt. b (1980) (noting that the "mere refusal of the court . . . to allow an amendment . . . , even where the refusal of the amendment was urged by the defendant, is not a reservation by the court [of the right to maintain a second action]").

We agree with the Board that Fiers failed to meet his burden to show patentable distinctness to avoid interference estoppel by judgment.

This issue of patentable distinctness arose in the most recent interference proceeding when the Board issued a show cause order requiring Fiers to "show why it will be able to prove an earlier date of conception in the current

---

Stoudt moved to add the proposed count. The interference examiner's denial of that motion was not appealable to the board, and Stoudt could do nothing further to bring the matter before the board in the earlier interference. The estoppel doctrine [based on failure to file a motion] therefore finds no application to the facts of this case.

*Id.* at 765.

interference when it could not do so in the prior interference [the '096 interference]." J.A. 2807. Noting that a losing party to an interference is barred from obtaining a patent on claims that are patentably indistinguishable from the subject matter of the earlier count, the Board stated that "[i]n light of [the fact] that DNA and the known genetic code indicating which DNA sequences encode each amino acid, those of skill in the art would have considered the polypeptide Fiers now claims to have been obvious." J.A. 2808.

Biogen argues on appeal that the hFIF proteins are patentably distinct because they are "functional," complaining that Fiers "should be entitled to introduce evidence in the '939 interference to demonstrate that in 1980 mere possession of the DNA sequence fell far short of possession of the functional protein required by the claims." Appellant's Br. at 43. But in fact, Biogen did have that opportunity in its response to the show cause order. It failed to properly submit evidence showing patentable distinctness, and cannot now argue that the proteins are patentably distinct from the DNA.

Biogen does not contend that the show cause order was issued erroneously, and does not dispute that Fiers had the burden to provide evidence to show patentable distinctness. Instead, Biogen argues that there is no estoppel by judgment here because Fiers showed in his response to the show cause order that the hFIF proteins claimed in the '939 interference are not obvious over the DNA sequences encoding those proteins that were at issue in the prior interferences. In his response, Fiers pointed to four pieces of alleged evidence.

First, Fiers pointed to the fact that, on April 15, 1982, the PTO imposed a restriction requirement during prosecution of Fiers' U.S. Application No. 06/250,609 (the "'609 application," of which the '843 application is a divisional),

filed April 3, 1981, between claims directed to the DNA sequences and claims directed to the proteins. However, a restriction requirement is not substantive evidence that Fiers' claims are patentably distinct over the DNA sequences. At most, it is evidence that the examiner thought that there were "two or more independent and distinct inventions" claimed in a single application. 35 U.S.C. § 121; 37 C.F.R. § 1.142; MPEP § 802.01 (9th ed. March 2014). Restriction requirements are discretionary decisions, primarily for administrative convenience, and do not represent a final determination that the relevant claims are patentably distinct. *See Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1568 (Fed. Cir. 1996) (noting restriction requirement is for "administrative convenience"); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558–59 (Fed. Cir. 1994) (same); *In re Watkinson*, 900 F.2d 230, 233 (Fed. Cir. 1990) (restriction is "a matter within the discretion of the examiner and not tantamount to a rejection of claims"); *In re Hengehold*, 440 F.2d 1395, 1403 (CCPA 1971) (restriction is a "discretionary, procedural or nonsubstantive" matter).[12]

-----

[12]  Biogen argues that the equitable principles underlying the safe harbor provision in 35 U.S.C. § 121 should apply here to protect Fiers from estoppel. *See* 35 U.S.C. § 121 ("A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application."). Section 121 provides a safe har-

Second, Fiers argued that separate interferences, Interferences No. 105,334 and No. 105,337, were declared between Sugano and a different party, Goeddel. Those interferences separately involved counts corresponding to hFIF proteins and the DNA encoding them. *See Goeddel v. Sugano*, 617 F.3d 1350, 1352 (Fed. Cir. 2010). But once again, this fact is not substantive evidence of patentable distinctness. The discretionary decision to declare separate interferences in another proceeding is not necessarily a determination, let alone a final one, of patentable distinctness.

Third, Fiers pointed to a Board decision in the initial ex parte proceeding concerning Fiers' '843 application reversing an examiner's determination that protein claims in the Fiers application were unpatentable as anticipated over Sugano's '859 and '567 patents. But in that decision, the Board reversed because the examiner had not established an evidentiary basis, and expressly said that it was making "no ruling as to whether the subject matter of the rejected claims is patentably distinct from" the DNA count in the first interference. J.A. 5212.

Finally, in a section of his response dedicated to arguing, not that the protein claims were patentably distinct, but that Fiers can prevail on priority, Fiers cited a decla-

---

bor from double patenting rejections against a patentee on claims that were a result of an earlier restriction requirement because it would be inequitable to reject divided claims on the ground of double patenting when the division was required on the theory that the original application contained claims for more than one invention. *See Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1361 (Fed. Cir. 2008). Section 121 is on its face inapplicable here, and in any case, the restriction requirement did not result in Fiers' losing in the prior interferences.

ration by Dr. David A. Jackson. However, in that declaration, Dr. Jackson addressed only whether the Japanese application contains a written description of an embodiment within the scope of the counts in the '939 interference, and whether the Japanese application provides sufficient information for one skilled in the art to practice such an embodiment without undue experimentation. J.A. 5198. There was nothing in the declaration about how Fiers' hFIF protein claims were not obvious over the lost counts directed to the DNA sequences.

We thus see no error in the Board's conclusion that Fiers submitted no relevant evidence on patentable distinctness and was thus estopped from continuing with the interference.

CONCLUSION

We conclude that as a result of the transfer we have jurisdiction under pre-AIA 35 U.S.C. § 141 to hear Biogen's appeal. This is so because the AIA eliminated district courts' subject matter jurisdiction under pre-AIA 35 U.S.C. § 146 to review decisions in interference proceedings declared after September 15, 2012. We therefore decline to transfer this case back to the district court.

On the merits, we conclude that the Board did not err in entering judgment against Fiers on the basis of interference estoppel because Fiers did not discharge its burden in response to the Board's show cause order to provide evidence of the patentable distinctness of its hFIF protein claims over the DNA sequences encoding for such proteins.

Biogen's request for retransfer is:

**DENIED**

The Board's decision is:

**AFFIRMED**

COSTS

Costs to appellees.