# United States Court of Appeals for the Federal Circuit

_____

**SNIPR TECHNOLOGIES LIMITED,**
*Appellant*

**v.**

**ROCKEFELLER UNIVERSITY,**
*Appellee*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

_____

2022-1260

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 106,123.

_____

Decided: July 14, 2023

_____

BRIAN ROBERT MATSUI, Morrison & Foerster LLP, Washington, DC, argued for appellant. Also represented by SETH W. LLOYD; PARISA JORJANI, MATTHEW IAN KREEGER, San Francisco, CA.

SALVATORE J. ARRIGO, III, Arrigo, Lee, Guttman, & Mouta-Bellum LLP, Washington, DC, argued for appellee.

Also represented by HARRY JOEL GUTTMAN.

SARAH E. CRAVEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor.  Also represented by THOMAS W. KRAUSE, MONICA BARNES LATEEF, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

_____

Before CHEN, WALLACH, and HUGHES, *Circuit Judges.*

CHEN, *Circuit Judge.*

In 2011, Congress enacted the Leahy-Smith America Invents Act (AIA), transforming the U.S. patent system from a first-to-invent to a first-inventor-to-file system for determining patent priority.  Pub. L. No. 112-29, 125 Stat. 284 (2011).  Under the old, pre-AIA first-to-invent system, the first person to invent had "priority" to an invention and was entitled to a patent, even if a different inventor was the first to file a patent application for that invention.  Under the AIA's new first-inventor-to-file system, however, the first person to file a patent application on an invention has priority and is entitled to a patent, even when another inventor can establish an earlier invention date.

As part of the new first-inventor-to-file patent system, Congress eliminated from the Patent Act "interferences," which are administrative priority contests the U.S. Patent and Trademark Office's (Patent Office) Patent Trial and Appeal Board (Board) has historically conducted in the old first-to-invent regime to determine which inventor among two inventors who claim the same invention could prove an earlier invention date.  The AIA's effective date provision, AIA § 3(n), makes clear that interferences and other first-to-invent aspects of pre-AIA law do not apply to patents exclusively governed by the AIA and issued under the new first-inventor-to-file regime.

The Board declared an interference between five first-inventor-to-file patents owned by SNIPR Technologies

Limited (SNIPR) and a first-to-invent patent application assigned to Rockefeller University (Rockefeller) that resulted in the cancellation of all claims of SNIPR's patents. *SNIPR Tech. Ltd. v. Rockefeller Univ.*, No. 106,123, 2021 WL 8566747 (P.T.A.B. Nov. 19, 2021) (*Decision*); *SNIPR Tech. Ltd. v. Rockefeller Univ.*, No. 106,123, 2021 WL 8566749, at \*1–2 (P.T.A.B. Nov. 19, 2021) (*Judgment*). SNIPR appeals, contending that the Board never should have subjected its first-inventor-to-file patents to a vestige of the old first-to-invent system: an invention date contest against Rockefeller's first-to-invent application through an interference. Because the text, purpose, and history of the AIA make clear that first-inventor-to-file patents exclusively governed by the AIA cannot be subject to an interference (save for one exception not applicable here), we *reverse*.

## BACKGROUND

### I. Statutory Background

Patent priority establishes who is entitled to a patent on a particular invention claimed by different parties. Passed in 2011, the AIA changed how priority is determined, by converting the U.S. patent system from a first-to-invent to a first-inventor-to-file system. Pub. L. No. 112-29, 125 Stat. 284. Under the first-to-invent system, the first person to invent a claimed invention had priority and was entitled to a patent. *See* pre-AIA[1] 35 U.S.C. § 102(g). This is true even when a later inventor beats the first inventor to filing a patent application. *See id.* When two different inventive entities claimed the same subject matter in a patent or patent application, the Patent Office would conduct an often arduous administrative proceeding—an interference proceeding—to determine the right of priority, i.e., who was the first inventor. Pre-AIA 35 U.S.C. § 135;

---

[1]    "Pre-AIA" refers to the versions in effect immediately before the AIA's effective date of March 16, 2013.

4    SNIPR TECHNOLOGIES LIMITED v. ROCKEFELLER UNIVERSITY

H.R. Rep. No. 112-98, at 40–41 (2011); S. Rep. No. 111-18, at 4 (2009)[2]. Under the AIA, however, interferences to determine which inventor had the earliest invention date are no longer necessary because it is now the first filer—not the first inventor—who has priority and is entitled to a patent.

Congress had several reasons for transitioning to a first-inventor-to-file system. Congress observed that using a patent's filing date to determine priority among competing inventors is objective and simple, whereas an invention date determination "is often uncertain, and, when disputed, typically requires corroborating evidence as part of an adjudication." H.R. Rep. No. 112-98, at 40; S. Rep. No. 111-18, at 4. In particular, resolving such invention date disputes required "a lengthy, complex and costly administrative proceeding (called an 'interference proceeding')" that "can take years to complete . . . , cost hundreds of thousands of dollars, and require extensive discovery." H.R. Rep. No. 112-98, at 40–41; S. Rep. No. 111-18, at 4. Moreover, the specter of an interference proceeding never goes away for patent holders: "because it is always possible that an applicant could be involved in an interference proceeding, companies must maintain extensive recording and document retention systems in case they are later required to prove the date they invented the claimed invention." H.R. Rep. No. 112-98, at 41; S. Rep. No. 111-18, at 4.

Congress also recognized that, by changing to a first-inventor-to-file system, inventors and companies filing for patent protection in foreign countries (which all use the first-inventor-to-file system) would not be forced to follow two different filing systems. H.R. Rep. No. 112-98, at 41–42; S. Rep. No. 111-18, at 5. Indeed, the U.S. was the last remaining country in the world to use a first-to-invent

---

[2]    The Senate Report relates to an earlier version of the AIA, but is mostly identical to the relevant parts of the House Report.

system prior to the passage of the AIA. David S. Abrams & R. Polk Wagner, *Poisoning the Next Apple? The America Invents Act and Individual Inventors*, 65 Stan. L. Rev. 517, 520 n.10 (2013) (citing Gerald J. Mossinghoff & Vivian S. Kuo, *World Patent System Circa 20XX, A.D.*, 38 IDEA 529, 548, 548 n.38 (1998)); *see also* H.R. Rep. No. 112-98, at 40–41; S. Rep. No. 111-18, at 3–4 (both explaining that "[e]very industrialized nation other than the United States uses a patent priority system commonly referred to as 'first-to-file.'"). In short, Congress disliked interferences and wanted to get rid of them, and also sought to align the United States with the patent filing systems around the world.[3]

Converting to a first-inventor-to-file patent system required significant changes to the statutory scheme.

The AIA redefined what constitutes "prior art" against a patent or application. AIA § 3(b)–(c). Before the AIA's passage, prior art referred to certain documents available before the actual date of invention. *See* pre-AIA 35 U.S.C. § 102(a), (e) (entitling a person to a patent unless the invention was described in certain patents or printed publications "before the invention . . . by the applicant for patent"). Under the AIA, prior art now refers to certain documents available before the "effective filing date of the claimed invention." AIA § 3(b)(1) (amending 35 U.S.C. § 102(a)). *Compare* pre-AIA 35 U.S.C. § 102, *with* 35 U.S.C. § 102. The AIA similarly changed the obviousness

---

[3]    Congress's motivations are also reflected in the text of the AIA itself, which states that the purpose of the AIA is to: (1) provide inventors with greater certainty as to the scope of protection provided by the grant of exclusive rights to their discoveries, and (2) harmonize the U.S. patent system with "the patent systems commonly used in nearly all other countries throughout the world," "thereby promot[ing] greater international uniformity and certainty." AIA § 3(o), (p).

standard to comport with a first-inventor-to-file world. Under pre-AIA law, obviousness was considered "at the time the invention was made"—i.e., the date of invention. Pre-AIA 35 U.S.C. § 103. With the AIA, obviousness is now considered from "the effective filing date of the claimed invention." 35 U.S.C. § 103.

Congress also removed the statutory requirement for "priority of invention" entitling only the first inventor to a patent and eliminated the mechanisms for determining such priority. Pre-AIA 35 U.S.C. § 102(g) authorized either the Patent Office under pre-AIA § 135 or a district court under pre-AIA 35 U.S.C. § 291 to conduct an interference to determine who among competing inventors had "priority of invention," that is, who was the first inventor.[4] *See also* pre-AIA § 135 (The Board "shall determine questions of priority of inventions"). The AIA, however, removed invention priority as a patentability requirement from § 102. AIA § 3(b)(1). *Compare* pre-AIA § 102(g), *with* 35 U.S.C. § 102. The AIA also repealed interferences in pre-AIA §§ 135 and 291, replacing it with a new proceeding called a "derivation." AIA § 3(h), (i) (amending 35 U.S.C. §§ 135, 291); 35 U.S.C. §§ 135, 291. Where interference proceedings determined who was the first inventor, derivation proceedings determine whether an earlier filer had derived the claimed invention from a later filer. *Compare* pre-AIA §§ 102(g), 135, *with* 35 U.S.C. §§ 135, 291. Relatedly, Congress deleted all remaining references to interferences in the statutory scheme. AIA § 3(j) (eliminating references to interferences in 35 U.S.C. §§ 134, 145, 146, 154, 305). The priority of invention requirement and related interferences were no longer relevant because patentability under the AIA is based on the "effective filing date of the claimed invention" instead of the actual date of

---

[4]    We collectively refer to pre-AIA 35 U.S.C. §§ 102(g), 135, and 291 as the "Interference Provisions."

invention.  AIA §§ 3(b)(1), 3(c).  *Compare* pre-AIA 35 U.S.C. §§ 102–103, *with* 35 U.S.C. §§ 102–103.

Given these and other significant changes, Congress chose not to apply the AIA's amendments retroactively to existing patents and pending applications.  Instead, Congress enacted timing provisions specifying that the AIA's new first-to file regime "shall apply" to patents and applications that "contain[] or contained at any time . . . a claim . . . that has an effective filing date . . . *on or after* [March 16, 2013]."  AIA § 3(n)(1) (emphasis added).  Accordingly, for patents and applications with an effective filing date *before* March 16, 2013, the pre-AIA first-to-invent system continues to apply.  *See* AIA § 3(n)(1); *Biogen MA, Inc. v. Japanese Found. for Cancer Rsch.*, 785 F.3d 648, 655 (Fed. Cir. 2015) (explaining that under AIA § 3(n)(1), "new AIA provisions [apply] only to new applications" and "interference proceedings are to continue with respect to . . . applications filed before March 16, 2013.").

Congress also went out of its way to specify a small subset of AIA first-inventor-to-file patents that would be nonetheless subject to interferences.  Under this exception, pre-AIA Interference Provisions "shall apply to each claim" of any AIA first-inventor-to-file patent or application "if such application or patent contains or contained at any time" a claim with an effective filing date before March 16, 2013.  AIA § 3(n)(2).  Thus, AIA § 3(n)'s effective date provisions created three distinct categories of patents and applications:

> **Pure pre-AIA patents and applications:**  patents and applications that have only ever contained claims with pre-AIA effective filing dates (i.e., before March 16, 2013) are subject to the patentability requirements and Interference Provisions in the pre-AIA versions of 35 U.S.C. §§ 102, 103, 135, and 291.  AIA § 3(n)(1).

> **Pure AIA patents and applications:**  patents and applications that have only ever contained

claims with post-AIA effective filing dates (i.e., on or after March 16, 2013) are subject to the patentability requirements and derivation proceedings in the AIA versions of 35 U.S.C. §§ 102, 103, 135, and 291.  AIA § 3(n)(1).

**Mixed patents and applications:**  patents and applications that contain (or contained at any time) at least one claim with a pre-AIA effective filing date *and* at least one claim with a post-AIA effective filing date are subject to the patentability requirements in the AIA versions of 35 U.S.C. §§ 102–103 but are also subject to the pre-AIA Interference Provisions.  *See* AIA § 3(n)(1)–(2).

## II.  The Patents and Application at Issue

The technology at issue relates to methods of selectively killing bacteria in a mixed set of bacteria using clustered regularly interspaced short palindromic repeats (CRISPR) gene editing.  SNIPR owns a family of five patents directed to this technology:  U.S. Patent Nos. 10,463,049; 10,506,812; 10,561,148; 10,524,477; 10,582,712 (SNIPR Patents).  The SNIPR Patents claim priority to PCT Application No. PCT/EP2016/059803, filed May 3, 2016.  Because their effective filing dates are after March 16, 2013, the SNIPR Patents are pure AIA patents that were examined and issued under the AIA's first-inventor-to-file patentability requirements.

Rockefeller's Application No. 15/159,929 (Rockefeller Application) is also directed to selectively killing bacteria. It claims priority to PCT Application No. PCT/US2014/015252, filed on February 7, 2014, and U.S. Provisional Application 61/761,971 (Rockefeller Provisional), filed February 7, 2013.  Based on the Rockefeller Provisional's filing date, the Rockefeller Application is a

pure pre-AIA application.  Appellee's Br. 14; Intervenor's Br. 1 n.1.[5]

### III.  Procedural Background

The Board initially declared an interference between claims 20–33 of the Rockefeller Application and all claims of the SNIPR Patents, to determine which party was the first to invent the claimed subject matter.  J.A. 666, 672–73.  Due to the Rockefeller Application's earlier filing date, the Board identified Rockefeller as the senior party, with an accorded benefit date[6] of February 7, 2014, and SNIPR as the junior party, with an accorded benefit date of May 3, 2016.  J.A. 668–70, 673.

SNIPR moved to terminate the interference as contrary to the AIA because "interference[s are] unavailable to assess patents that are governed by the AIA."  J.A. 872.  The Board subsequently redeclared an interference on July 21, 2020, maintaining SNIPR's benefit date but according Rockefeller an earlier, pre-AIA benefit date of February 7, 2013.  J.A. 877, 881.

SNIPR again moved to terminate the interference, arguing that the AIA eliminated interferences for AIA patents such as the SNIPR Patents.  J.A. 922–35.  The Board denied SNIPR's motion, reasoning that pre-AIA patent claims (such as Rockefeller's) must "comply with [pre-AIA] 35 U.S.C. § 102(g)," which requires an interference under

---

[5]    There is some dispute as to whether the Rockefeller Application is a pure pre-AIA or mixed application.  Appellant's Br. 36–37, 59; Intervenor's Br. 1 n.1, 2.  Regardless, the status of the Rockefeller Application does not affect our analysis.

[6]    The accorded benefit date is the date for which the Board recognizes that a patent application provides a proper constructive reduction to practice of the invention under pre-AIA 35 U.S.C. § 102(g)(1).  *See* 37 C.F.R. § 41.201.

pre-AIA § 135 between the claims of the Rockefeller Application and the SNIPR Patents. *Decision*, 2021 WL 8566747, at *2–6.

Because SNIPR had not filed any priority statement asserting an invention date earlier than Rockefeller's earliest accorded benefit date, the Board found that SNIPR failed to overcome Rockefeller's senior party status. *Id.* at *9. Thus, the Board entered judgment against SNIPR and cancelled all claims of the SNIPR Patents. *Judgment*, 2021 WL 8566749, at *1–2.

SNIPR timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) (2011).

## STANDARD OF REVIEW

Statutory interpretation is a question of law we review de novo. *VirnetX Inc. v. Apple Inc.*, 931 F.3d 1363, 1369 (Fed. Cir. 2019) (citation omitted).[7]

## DISCUSSION

The issue before us is whether pure AIA patents may be part of an interference. Specifically, the dispute is whether the Board has the authority to cancel SNIPR's pure AIA claims through an interference for lack of invention priority under pre-AIA § 102(g). SNIPR argues that the pure AIA SNIPR Patents are exclusively governed by AIA law, and thus cannot be part of an interference, a proceeding the AIA removed from the Patent Act. Appellant's Br. 39–52. Rockefeller and the Director respond that AIA § 3(n) requires Rockefeller's pre-AIA application to be evaluated under pre-AIA § 102(g), which requires an interference under pre-AIA § 135(a) to determine priority of invention. Appellee's Br. 14–15; Intervenor's Br. 17–18. Because pre-AIA § 135(a) authorizes the Director to declare an interference between any interfering application

---

[7]    The Patent Office did not seek *Chevron* deference for any of its statutory interpretations.

and "any unexpired patent," they argue that the Director can declare an interference that includes pure AIA patents like SNIPR's.  Appellee's Br. 19–21; Intervenor's Br. 17–21.

We agree with SNIPR and hold that pure AIA patents may not be part of an interference.[8]  We do not interpret the language "any unexpired patent" in pre-AIA § 135 to include pure AIA patents.  SNIPR's pure AIA patents were examined and issued under the AIA's first-inventor-to-file patentability requirements; they cannot then be cancelled under the different, pre-AIA invention priority requirements.  As such, the Director erred by declaring an interference involving the SNIPR Patents.

## I.  AIA § 3(n)

"Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005).  Based on the plain language of AIA § 3(n) and the statutory purpose and history of the AIA, we conclude that pure AIA patents may not be part of an interference.

AIA § 3(n) makes clear that only pure pre-AIA and mixed patents may be part of an interference.  Section 3(n)(1) provides that the AIA's amendments to the Patent Act, that is, the first-inventor-to-file regime, "shall apply" to any patents that have ever contained a claim with an effective filing date on or after March 16, 2013:

(n) EFFECTIVE DATE.—

> (1) IN GENERAL.—Except as otherwise provided in this section, *the amendments made by this section shall take effect [on*

---

[8]    Because we agree with SNIPR's arguments that the AIA bars subjecting its patents to an interference, we need not address its arguments alleging other errors by the Board.  *See*, e.g., Appellant's Br. 52–60.

*March 16, 2013], and shall apply to any application for patent, and to any patent issuing thereon, that contains or contained at any time—*

(A) *a claim* to a claimed invention *that has an effective filing date* as defined in section 100(i) of title 35, United States Code, *that is on or after [March 16, 2013]*; or

(B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

AIA § 3(n)(1) (emphasis added).  The word "shall" is "both mandatory and comprehensive" and "generally imposes a nondiscretionary duty." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).  Thus, the AIA's first-inventor-to-file requirements "shall" apply to patent claims with an effective filing date *on or after* March 16, 2013; because § 3(n)(1) does not permit the AIA's amendments to apply retroactively, pre-AIA law, then, continues to apply to patents with an effective filing date *before* March 16, 2013.  *See id.*; *see also Biogen*, 785 F.3d at 655.[9]  Because the AIA repealed interferences in pre-AIA § 135 and replaced them with derivations, interferences simply do not exist for AIA patents unless Congress specifically provides otherwise.

On the very issue of whether *any* AIA patents may be part of an interference, Congress specifically considered

---

[9]    In *Biogen*, we considered AIA § 3(n) to determine whether the AIA eliminated the district court's jurisdiction to review interference decisions under pre-AIA 35 U.S.C. § 146.  *Biogen*, 785 F.3d at 654.  We did not, however, address whether AIA § 3(n) allows pure AIA patents to be part of an interference.

that question and created one limited exception for "mixed patents" in AIA § 3(n)(2), which states:

> (2) INTERFERING PATENTS.—*The provisions of sections 102(g), 135, and 291 of title 35, United States Code*, as in effect on [March 15, 2013], *shall apply* to each claim of an application for patent, and any patent issued thereon, *for which the amendments made by this section also apply, if such application or patent contains or contained at any time—*
>
>> (A) *a claim* to an invention *having an effective filing date* as defined in section 100(i) of title 35, United States Code, *that occurs before [March 16, 2013]*; or
>>
>> (B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

AIA § 3(n)(2) (emphasis added); *see supra* Background § I. So, for example, for any mixed patent or application that includes a patent claim to which the AIA amendments apply (because that claim's effective filing date is on or after March 16, 2013), but also contains or once contained a patent claim having an effective filing date before March 16, 2013, then the pre-AIA Interference Provisions "shall apply." Through this one exception, Congress specifically circumscribed the subset of patents and applications to which the AIA applies that nonetheless may be subject to an interference—so-called mixed patents and applications. The provision of AIA § 3(n)(2) to expand the scope of interference practice in a limited manner is thus strong evidence that Congress did not wish to further open the interference door to pure AIA patents and applications. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *United States v. Smith*, 499 U.S. 160, 167 (1991) (quoting

*Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–617 (1980)).

There is no hint of congressional intent to expose pure AIA first-inventor-to-file patents and applications to interferences. To the contrary, the purpose and history behind the AIA reinforce our understanding of the text. Congress was dead set on eradicating interferences for new applications, criticizing them as lengthy, expensive, and requiring companies to maintain extensive documentation and systems to prove the date of their invention. *See* H.R. Rep. No. 112-98, at 41; S. Rep. No. 111-18, at 4. By enacting the AIA, Congress "eliminate[d] costly, complex interference proceedings" "[a]s part of the transition to a simpler, more efficient first-inventor-to-file system." H.R. Rep. No. 112-98, at 42; S. Rep. No. 111-18, at 5–6. Congress's stated mission to eliminate interferences further supports our understanding that AIA § 3(n) should not be read to allow pure AIA patents to be part of interference proceedings.

Read together, AIA § 3(n)(1) and AIA § 3(n)(2)'s limited exception create two separate worlds for interferences: pure pre-AIA and mixed patents are subject to interferences; pure AIA patents are not.[10] Accordingly, we conclude that the AIA bars pure AIA patents from being subject to an interference.

## II.  Pre-AIA § 135

Rockefeller and the Director argue that the SNIPR Patents can be subject to an interference based on the

---

[10]    While AIA § 3(n) put applicants on notice that mixed patents would be subject to AIA patentability requirements *and* pre-AIA interferences, the Director acknowledges that the Patent Office has never put applicants on notice of her current interpretation that pure AIA patents would also be subject to interferences. Oral Arg. at 23:43–25:00.

language "any unexpired patent" in pre-AIA § 135(a).  Appellee's Br. 19–21; Intervenor's Br. 17–21.  In their view, any pure AIA patent can be hauled into an interference for an invention priority contest under pre-AIA law with a pure pre-AIA or mixed application claiming the same subject matter.

Pre-AIA § 135(a) authorizes the Director to declare an interference between an application that would interfere with "any unexpired patent," wherein the Board "shall determine questions of priority of the inventions."  Pre-AIA § 135(a).  Read in context with the AIA, however, the language "any unexpired patent" from pre-AIA § 135 does not include pure AIA patents.

"Our duty [in statutory construction] is to construe statutes, not isolated provisions."  *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotations and citations omitted).  Thus, "we must read the words in their context and with a view to their place in the overall statutory scheme."  *Id.* (internal quotations and citations omitted).  Here, we must read pre-AIA § 135 in light of the AIA and its effective date provisions in AIA § 3(n).  For new applications, the AIA entirely replaced interference proceedings with derivation proceedings in 35 U.S.C. § 135 and deleted all other references to interferences in 35 U.S.C. §§ 134, 145, 146, 154, 305.  AIA §§ 3(i), 3(j)(2).  The AIA also removed priority of invention as a basis for patentability, rendering interferences meaningless for pure AIA patents.  AIA § 3(b)(1) (amending § 102 to have no requirement for invention priority).  *Compare* pre-AIA 35 U.S.C. § 102, *with* 35 U.S.C. § 102.  AIA § 3(n)(1) requires that the new versions of §§ 135 and 102 apply to pure AIA patents, while AIA § 3(n)(1)–(2) requires that pre-AIA versions of §§ 135 and 102 apply to pure pre-AIA and mixed patents.  Thus, when pre-AIA § 135 is read in context with the AIA, it is clear that the language "any unexpired patent" cannot refer to pure AIA patents.  Such a reading would be inconsistent with the plain language of AIA § 3(n), which does not allow for pure AIA patents to be part of interferences,

16   SNIPR TECHNOLOGIES LIMITED v. ROCKEFELLER UNIVERSITY

and the AIA amendments repealing interferences and the priority of invention requirement for pure AIA patents.

Moreover, interpreting "any unexpired patent" in pre-AIA § 135 to include pure AIA patents would defeat a central purpose of the AIA. *See King*, 576 U.S. at 492 (rejecting an interpretation of the provision that would create the very issues that the statutory scheme was designed to avoid). The goal of the AIA was to transition the U.S. patent system to a first-inventor-to-file system and eliminate the specter of interferences going forward for new applications. *See supra* Background § I. Yet the Director acknowledges that this interpretation would permit pure AIA patents to be dragged into interferences until the year 2034, when there are no more pre-AIA patents or applications. Oral Arg. at 26:46–27:18. We are not convinced that Congress, without explicitly saying so, intended to subject AIA patents to interferences for over twenty years after the AIA's effective date when the purpose of the AIA was to move the U.S. patent system to a first-inventor-to-file system and eliminate interferences. AIA § 3(o), (p); H.R. Rep. No. 112-98, at 40–42; S. Rep. No. 111-18, at 4–6. Thus, the language "any unexpired patent," when read in context with the AIA, cannot refer to pure AIA patents.

Relatedly, we also conclude that the specific provisions of AIA § 3(n) control over the general "any unexpired patent" language in pre-AIA § 135. *See Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961) ("[A] specific statute controls over a general one 'without regard to priority of enactment.'") (quoting *Townsend v. Little*, 109 U.S. 504, 512 (1883)). Unlike AIA § 3(n)(1), pre-AIA § 135 does not specifically address whether pure AIA patents may be part of interferences and subject to first-to-invent patentability requirements. From these AIA statutory provisions, as explained above, the answer is no. *See supra* Discussion § I. The specific provisions of AIA § 3(n) control over the general "any unexpired patent" language in pre-AIA § 135.

Finally, Rockefeller's and the Director's interpretation of pre-AIA § 135 would render superfluous Congress's limited exception in AIA § 3(n)(2). *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) (stating that courts should not "interpret[ ] any statutory provision in a manner that would render another provision superfluous"); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Under Rockefeller's and the Director's interpretation of "any unexpired patent" in pre-AIA § 135 as encompassing any pure pre-AIA, mixed, or pure AIA patent, AIA § 3(n)(2) would not be necessary to subject mixed patents to interferences. We reject an interpretation that would render AIA § 3(n)(2) superfluous.[11] Accordingly, we conclude that "any unexpired patents" in pre-AIA § 135 does not include pure AIA patents.

### III.    Rockefeller's and the Director's Remaining Arguments

Rockefeller and the Director assert that without an interference, the Patent Office will be forced to issue two patents to the same invention under the pre-AIA and AIA systems, which conflicts with the principle that only one patent may be issued for an invention. Appellant's Br. 25–26; Intervenor's Br. 17, 19–20, 21 n.10, 23–25, 27. The AIA, however, provides several mechanisms that allow the Patent Office to reconsider a patent it incorrectly

---

[11]    The Director asserts that pre-AIA § 135 "only bars pure AIA applications and patents" from "*provoking* an interference, not from any *involvement* in an interference." Intervenor's Br. 21. Under pre-AIA § 135, "an application" may provoke an interference with "any unexpired patent." The Director, however, fails to explain why "an application" excludes pure AIA patents but "any unexpired patent" can be understood differently to include pure AIA patents.

granted: (1) *inter partes* review under 35 U.S.C. §§ 311–319, (2) post-grant review under 35 U.S.C. §§ 321–329, and (3) *ex parte* reexamination under 35 U.S.C. §§ 301–305.[12] And because a pure pre-AIA application will always have an effective filing date before March 16, 2013, while a pure AIA patent will have an effective filing date on or after that date, the pure pre-AIA application, once published or patented, will be prior art to the pure AIA patent under 35 U.S.C. § 102(a)(2), thus ensuring that two patents for the same invention will not be granted under the two different regimes. Appellant's Reply Br. 12; *see* Oral Arg. at 9:47–10:00, 10:21–10:40, 39:42–40:18. Under the AIA, these are the mechanisms available to ensure two patents do not issue to the same invention.

The Director identifies a single, highly unusual scenario in which a pure pre-AIA application would not be prior art to a pure AIA patent under 35 U.S.C. § 102(b)(2)(B), thereby permitting two patents on the same invention. Intervenor's Br. 8–9. The Director's scenario is predicated on the alignment of several circumstances:

1) the AIA patent must have been filed on or after March 16, 2013, *see* AIA § 3(n)(1);

2) the subject matter disclosed in the AIA patent must have been previously disclosed by the inventor of the AIA patent, *see* 35 U.S.C. § 102(b)(2)(B);

3) the previous disclosure must have been made less than one year before the AIA patent was filed

---

[12]   All parties generally agree that *inter partes* review, post-grant review, and *ex parte* reexamination are available to challenge the patentability of issued patents under the AIA. Oral Arg. at 11:30–11:58, 16:20–16:52, 39:28–40:06. Thus, SNIPR's patents could be challenged through *inter partes* review or *ex parte* reexamination.

so that the previous disclosure cannot be considered prior art, *see* 35 U.S.C. § 102(b)(1);

4) the pre-AIA application being considered as prior art must be a U.S. patent, published application, or published PCT application, *see* 35 U.S.C. § 102(a)(2);

5) the pre-AIA application being considered as prior art must have an effective filing date before March 16, 2013, *see* AIA § 3(n)(1);

6) the pre-AIA application must have been filed between the disclosure of the AIA invention and the filing of the AIA application or patent, *see* 35 U.S.C. § 102(b)(2)(b); and

7) the pre-AIA application and the AIA patent must claim the same invention.

As is apparent, this scenario is a remote one, contingent on many facts coming together and the filing dates for the AIA patent and pre-AIA application necessarily occurring close in time around March 16, 2013 and less than a year apart. The Director concedes that she is not aware of this scenario having occurred. Oral Arg. at 20:20–21:21. Given the unlikelihood of this obscure situation, we are not persuaded that Congress believed interferences must be permitted between pure AIA patents and pre-AIA applications up through 2034.

## IV. SNIPR Patents

Having determined that the AIA excludes pure AIA patents from interferences, we now turn to the facts before us. It is undisputed that the SNIPR Patents have an effective filing date after March 16, 2013 and are pure AIA patents. Appellant's Br. 11, 32; Appellee's Br. 3–4; Intervenor's Br. 10. Because pure AIA patents may not be part of interferences, the Director erred by subjecting the SNIPR Patents to an interference. This error is true

20   SNIPR TECHNOLOGIES LIMITED v. ROCKEFELLER UNIVERSITY

regardless of whether the Rockefeller Application is a pure pre-AIA application or a mixed application.[13]

## CONCLUSION

We have considered Rockefeller's and the Director's remaining arguments and find them unpersuasive. For the foregoing reasons, we reverse.

**REVERSED**

---

[13] The filing date of Rockefeller's published application predates the earliest effective filing date of the SNIPR Patents and is therefore prior art under the AIA's 35 U.S.C. § 102(a). Whether that published application anticipates any of SNIPR's claims was never adjudicated during the interference. Likewise, the Board never considered whether the Rockefeller Application satisfies the written description and enablement requirements for the claims Rockefeller amended to correspond to the SNIPR Patents. These issues remain disputed between the parties.