# United States Court of Appeals for the Federal Circuit

---

**SANHO CORP.,**
*Appellant*

**v.**

**KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.,**
*Appellee*

---

2023-1336

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00886.

---

Decided: July 31, 2024

---

DAVID KEELER LUDWIG, Hill, Kertscher & Wharton LLP, Atlanta, GA, argued for appellant. Also represented by STEVEN G. HILL.

RYAN GENTES, Lee & Hayes, PC, Atlanta, GA, argued for appellee. Also represented by R. BRUCE BOWER, JAMES D. STEIN.

---

Before DYK, CLEVENGER, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

Appellant Sanho Corporation ("Sanho") appeals from a final decision of the Patent Trial and Appeal Board ("Board") finding all challenged claims of U.S. Patent No. 10,572,429 ("the '429 patent") unpatentable as obvious. Each obviousness combination included U.S. Patent Application Publication No. 2018/0165053, known as Kuo. Kuo ordinarily would be prior art because its effective filing date predates the effective filing date of the '429 patent, save for the exception in 35 U.S.C. § 102(b)(2)(B). The sole issue on appeal is the applicability of the prior art exception in that provision. It provides that "[a] disclosure shall not be prior art to a claimed invention under subsection [102](a)(2) if . . . the subject matter disclosed had, before such subject matter was effectively filed under subsection (a)(2), been publicly disclosed by the inventor." § 102(b)(2)(B).

Sanho argues that, before Kuo's effective filing date, the inventor of the '429 patent "publicly disclosed" the relevant subject matter of Kuo through the private sale of a product (the HyperDrive) allegedly embodying the claimed invention. We understand the Board to have concluded that this private sale does not qualify for the exemption of section 102(b)(2)(B), and Kuo is prior art. We affirm.

BACKGROUND

The '429 patent concerns "[a] port extension apparatus for extending ports of an end-user device," such as a laptop computer. J.A. 928, at col. 6, ll. 46–47. The specification describes a series of ports and connections as well as a data transmission control module, which together allow devices "to connect to data ports of an end-user device." J.A. 927, at col. 3, ll. 2–3. This allows for easier connections between, for example, a laptop computer and peripheral devices such as a printer.

SANHO CORP. v.                                              3
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

Kaijet Technology International Limited, Inc. ("Kaijet") filed a petition for inter partes review challenging most claims of the '429 patent as obvious. Each obviousness ground relied on a combination of prior art that included Kuo. The relevant portion of Kuo discloses a "control system compris[ing] a main control unit that supports USB Type-C (USB-C) interface specification, [and] an image signal processing unit electrically connected to the main control unit and adapted for receiving a display port signal." J.A. 1362, ¶ 21 (numerals omitted). Thus, both the '429 patent and Kuo concern docking stations for connecting multiple devices to an end user device.

In the final written decision, the Board found claims 1–6 and 13–17 of the '429 patent unpatentable as obvious, relying on Kuo as prior art under section 102(a)(2). Kuo's effective filing date is December 13, 2016—before the '429 patent's priority date of April 27, 2017. The question was whether the patentee was correct in arguing that Kuo is not prior art by virtue of section 102(b)(2)(B) of the Patent Act because the inventor purportedly "publicly disclosed" the relevant subject matter of Kuo through the private sale of a device that incorporated the invention and predated Kuo's effective filing date.

Specifically, Sanho contended that the inventor's sale of the so-called HyperDrive device constituted a public disclosure by the inventor of the relevant subject matter in Kuo. Mr. Liao, the inventor of the '429 patent, offered to sell the HyperDrive to Sanho's owner on November 17, 2016. After obtaining a HyperDrive sample, Sanho placed an order for 15,000 HyperDrive units on December 6, 2016, that was accepted by Mr. Liao's company, GoPod Group Ltd. (constituting an actual sale). Sanho made no showing that the sale of the HyperDrive that predated Kuo's effective filing date was publicized in any way, or that there were any such sales other than the private sale of HyperDrives from the inventor to Sanho. There is also nothing in the record to indicate that the order for 15,000

HyperDrives was fulfilled before Kuo's effective filing date, or what became of those devices.

The Board determined that the "Patent Owner fail[ed] to show that the inventor publicly disclosed the subject matter of Kuo before Kuo's effective filing date." J.A. 39.[1] Therefore, the Board concluded that "Kuo qualifies as prior art, not excluded under § 102(b)(2)(B)." J.A. 45. The Board found all challenged claims unpatentable over combinations that all included Kuo.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).[2]

---

[1] Before the Board, Sanho also contended that an online "Kickstarter" campaign with descriptions and photographs of the device also constituted a public disclosure. The Board rejected this argument after finding that the articles and photographs were either published after Kuo's effective filing date or were insufficiently clear and detailed to disclose the relevant subject matter. That determination was not challenged in Sanho's opening brief. Although Sanho suggested in its reply brief that Sanho's owner "publicized the sale on Appellant's Kickstarter website, publishing images, videos, and other information," Appellant's Reply Br. 10, any argument that the Kickstarter campaign further disclosed the subject matter of the sale is forfeited because it was not raised in the opening brief. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

[2] Kaijet informed us that Sanho had granted it a covenant not to sue on the '429 patent and that Kaijet "no longer has any commercial interest in the validity of this patent." Oral Arg. 23:20–52. We consider sua sponte whether the case is moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). We conclude that it is not. The Board's final written decision found claims 1–6 and 13–17

SANHO CORP. v.                                                                5
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

DISCUSSION

On appeal, Sanho argues that "[t]he Board's failure to find that the HyperDrive sale to Sanho itself constituted a public disclosure under 35 U.S.C. § 102(b)(2)(B) was legal error." Appellant Op. Br. 17. In response, Kaijet argues that, even if the HyperDrive embodied the relevant features of the claimed invention, the sale did not publicly disclose the relevant subject matter for purposes of section 102(b)(2)(B) because the relevant features of the claimed invention were not sufficiently publicized to render the subject matter "publicly disclosed."[3] We consider whether a non-confidential but otherwise private sale results in an invention's subject matter being "publicly disclosed" for purposes of section 102(b)(2)(B).

I

"In 2011, Congress enacted the Leahy-Smith America Invents Act (AIA), transforming the U.S. patent system

---

of the '429 patent unpatentable. Sanho still has a legally cognizable interest in the outcome of the appeal since it could assert the patent against other parties. It is still possible for us to grant relief by remanding or vacating the Board's decision (assuming Sanho prevails). *See Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1301 (Fed. Cir. 2020).

[3] Kaijet argues alternatively that, even if the sale was a public disclosure for purposes of the statute, it did not disclose the relevant subject matter of Kuo because Kuo described a single-chipset data transmission control module and Sanho has failed to demonstrate that the HyperDrive disclosed the same configuration. We do not reach this issue, but assume, without deciding, that Sanho is correct that the HyperDrive device embodied the relevant teachings of Kuo that were asserted against the '429 patent.

from a first-to-invent to a first-inventor-to-file system for determining patent priority." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1373 (Fed. Cir. 2023) (citing Pub. L. No. 112–29, 125 Stat. 284 (2011)). In doing so, Congress "redefined what constitutes 'prior art' against a patent or application" by amending section 102 of the Patent Act. *Id.* at 1375. Section 102(a)–(b) as revised by the AIA is quoted in Appendix A to this opinion.

Under the AIA, whether a reference is prior art is determined based on "the effective filing date of the claimed invention," rather than the date of the invention. 35 U.S.C. § 102(a). Thus, prior art includes other patent applications effectively filed, or other patents issued, before the effective filing date of the patent at issue. *Id.* § 102(a)(2). Section 102(a)(1) also defines prior art to include situations in which the claimed invention was "described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." However, Congress provided exceptions for certain references that would otherwise be prior art. These exceptions fit into two broad categories.

First, section 102(b) contains two largely parallel exceptions at subsections (b)(1)(A) and (b)(2)(A). The subsection (b)(1)(A) exception applies to disclosures covered by section 102(a)(1) ("described in a printed publication, or in public use, on sale, or otherwise available to the public") created within one year before patent filing. It provides a prior art exception for a "disclosure" that was either "made by the inventor . . . or by another who obtained the subject matter disclosed directly or indirectly from the inventor." § 102(b)(1)(A). Thus, for example, a private or public sale by the inventor during the one-year grace period is not prior art. Subsection (b)(1)(A) provides protection only during the one-year grace period. The parallel provision at subsection (b)(2)(A) applies to disclosures covered by section 102(a)(2) (patent applications filed by another). It provides a prior art exception for "subject matter disclosed"

that "was obtained directly or indirectly from the inventor."
§ 102(b)(2)(A).  Subsection (b)(2)(A) is not limited to disclosures in the one-year grace period.  Together, subsections (b)(1)(A) and (b)(2)(A) operate in the context of the first-inventor-to-file regime to provide protection for otherwise invalidating disclosures by the patentee or by someone who obtained the subject matter from the patentee, whether directly or indirectly.  These subsections do not include a "publicly disclosed" requirement.

Second, section 102(b) contains two provisions directed at disclosures by another (that is, not by the inventor)[4] after the "subject matter disclosed" was "publicly disclosed by the inventor" in subsections (b)(1)(B) and (b)(2)(B).  Subsection (b)(1)(B) refers to activities by the inventor or a third party that would otherwise be invalidating disclosures under section 102(a)(1) ("described in a printed publication, or in public use, on sale, or otherwise available to the public") made within one year of the patent filing, and subsection (b)(2)(B) refers to patent applications by another (section 102(a)(2) disclosures) that disclosed the "subject matter [already] disclosed" by the inventor, without regard to the one-year time limit.  In summary, these provisions except from prior art disclosures that were made after the invention was "publicly disclosed" by the inventor.

We are concerned here with the subsection (b)(2)(B) exception, which applies only to prior patent filings by another and provides that such a "disclosure shall not be prior art" if "the subject matter disclosed had . . . been publicly disclosed by the inventor."

---

[4]    For simplicity we use the term "inventor" here to cover both the inventor and another who obtained "the subject matter disclosed . . . directly or indirectly from the inventor."  § 102(b)(2)(A).

II

Sanho contends that the phrase "publicly disclosed" in section 102(b)(2)(B) should be construed to include all the "disclosure[s]" described in section 102(a)(1), including situations in which the invention was "on sale." It points out that under the Supreme Court's decision in *Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 586 U.S. 123, 132 (2019), a private commercial sale constitutes a disclosure under section 102(a)(1). The issue here is whether placing something "on sale" in section 102(a)(1) means that the invention embodied by the device sold is necessarily "publicly disclosed" for purposes of section 102(b)(2)(B).

A

We start with the language of the statute. Section 102(b)(2)(B) excludes "[a] disclosure" from prior art if "the subject matter disclosed had . . . been publicly disclosed by the inventor" before the prior art's effective filing date. Sanho contends that the "plain language of 35 U.S.C. § 102 indicates that a product sale is a 'disclosure,'" including "[e]ven [s]ales [n]ot [d]isclosed to the [p]ublic." Appellant Op. Br. 17, 18 (emphasis omitted). This is so because, according to Sanho, the plain meaning of "publicly disclosed" in section 102(b)(2)(B) is the same as "disclosed" and "disclosure" used elsewhere in section 102. Sanho argues that "identical words used in different parts of the same statute are presumed to have the same meaning," so the term "publicly disclosed" should also include "disclosures" (*i.e.*, private sales). Appellant Op. Br. 18 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006)).

Sanho's first problem is that the words "publicly disclosed" are not the same as the word "disclosed." The use of the two different phrases—"disclosed" and "publicly disclosed"—suggests that Congress intended the phrases to have different meanings. "A statute should be construed

so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (alteration in original) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, 181–86 (rev. 6th ed. 2000)). We think that the added word, "publicly," both negates Sanho's consistent usage argument and suggests that the sorts of disclosures that qualify for the exception in section 102(b)(2)(B) are a narrower subset of "disclosures" (*i.e.*, the disclosures that are "public"). *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, No. 2016-1284, 2018 WL 1583031, at *4 (Fed. Cir. Jan. 16, 2018) (O'Malley, J., concurring in denial of rehearing en banc) (non-precedential) ("If all prior art events—i.e., all 'disclosures'—recited in § 102(a) were already public disclosures, the word 'publicly' in § 102(b)(1)(B) would be redundant, and there would be no need for a separate rule for third-party disclosures."). That is, the exception applies only to "disclosures" that result in the subject matter of the invention being "publicly disclosed."

We assume Congress means what it says and says what it means. Here, Congress used two different phrases in two separate provisions. If Congress had intended that the exception for things "publicly disclosed" should be as broad as the invalidating "disclosures" in the immediately preceding subsection, it easily could have said so, either by using the same phrase or by cross-referencing the earlier provision. But it did neither; it instead used a new phrase to define the exceptions. Thus, we reject Sanho's argument that the plain language of the statute requires Sanho's preferred result. Rather, it points strongly in the opposite direction.

B

Sanho's reading is also contrary to the purpose of the exception. Section 102(b) appears to have as its purpose protection of an inventor who discloses his invention to the

public before filing a patent application because the inventor has made his invention available to the public—a major objective of providing patent protection in the first place. The Supreme Court has described the "patent 'bargain'" as the grant of a limited term of exclusivity "[i]n exchange for bringing 'new designs and technologies into the public domain through disclosure.'" *Amgen Inc. v. Sanofi*, 598 U.S. 594, 604 (2023) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150, 151 (1989)); *see also Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998) ("[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time.").

In light of this purpose, "publicly disclosed by the inventor" must mean that it is reasonable to conclude that the invention was made available to the public. If the subject matter of the invention were kept private, the inventor would not have disclosed the invention to the public. Section 102(b)(2)(B) thus works to protect inventors who share their inventions with the public from later disclosures made by others. Animating this exception appears to be the idea that priority should be given to the patentees who make their invention available to the public before a patent application filing by another. *See* 157 CONG. REC. S1360, S1369 (daily ed. Mar. 8, 2011) (statement of Sen. Jon Kyl). It would also be unfair to deny a patent to the original inventor if the inventor published the subject matter of the invention, but another filed a patent application appropriating the same subject matter after the inventor's public disclosure.

Sanho's construction cannot be correct. By isolating the phrase "publicly disclosed" from the purposes of the statutory scheme, Sanho's reading violates "the cardinal rule that a statute is to be read as a whole." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991).

SANHO CORP. v.                                          11
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

## C

Finally, to the extent that legislative history is relevant,[5] the legislative history states that "public disclosure" requires that the invention be made available to the public. The floor debate explains that "[w]hether an invention has been made available to the public is the same inquiry that is undertaken under existing law to determine whether a document has become publicly accessible." 157 CONG. REC. at S1370 (statement of Sen. Jon Kyl) (citing *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1333 (Fed. Cir. 2009) (holding that a reference was not prior art despite "distribution to a limited number of entities without a legal obligation of confidentiality" because it was not sufficiently publicly accessible)); *see also* JONATHAN S. MASUR & LISA LARRIMORE OUELLETTE, PATENT LAW 91–92 (1st ed. 2021) ("[P]ost-AIA § 102(b)(1)(B) states that the grace period only applies if the patent applicant *publicly* disclosed before the other party's prior art came into existence.").

So too "[u]nder [section 102(b)(1)(B) and 102(b)(2)(B)], if an inventor publicly discloses his invention, no subsequent disclosure made by anyone, regardless of whether the subsequent discloser obtained the subject matter from the inventor, will constitute prior art." 157 CONG. REC. at S1369 (statement of Sen. Jon Kyl). These provisions operate to ensure that, if the subject matter is sufficiently disclosed "to the public," a patentee will not be prevented from obtaining a patent merely because a third party disclosed what was already publicly disclosed by the inventor. *Id.*

## III

Sanho nonetheless argues that the language "publicly disclosed" incorporates earlier judicial interpretation of the

---

[5]    In *Helsinn* we questioned whether the AIA floor debates were pertinent to interpretation of the statute. 855 F.3d 1356, 1368 (Fed. Cir. 2017), *aff'd*, 586 U.S. 123.

word "public" in the context of invalidating "public use," despite the lack of any evidence that this was the congressional design. According to Sanho, under these cases a public use is a "'public' disclosure under 35 U.S.C. § 102(b)(2)(B) so long as the recipient of the device is not subject to secrecy obligations." Appellant Op. Br. 21.

Sanho again ignores the fact that "publicly disclosed" and "public use" are different terms, and that section 102(a) and section 102(b) serve fundamentally different purposes. While public disclosure of the features of the invention under section 102(b)(2)(B) *could* be accomplished through a public disclosure involving a public use, there is no requirement that such a public use *necessarily* "publicly disclose[s]" the invention. The Supreme Court has been clear that a public commercial use that does not disclose to the public all the features of the invention can still be invalidating prior art under the statute. *See, e.g.*, *Helsinn*, 586 U.S. at 130 ("[O]ur precedents suggest that a sale or offer of sale need not make an invention available to the public."). Because there is a difference between a commercial public use and a disclosure that puts the public in possession of the invention, we will not lightly assume that the new statutory phrase "publicly disclosed" incorporates existing law on the issue of "public use."

Sanho's misplaced reliance on the Supreme Court's decision in *Egbert v. Lippmann* makes clear the problems with its theory. That case concerned whether the use of an invention (a modified corset spring) by one person was "a public use within the meaning of the statute." 104 U.S. 333, 336 (1881). That statute, a precursor to section 102(a)(1), denied a patent if the invention "had been in public use or on sale with the applicant's consent or allowance" outside the grace period. Act of July 4, 1836, 24 Cong. Ch. 357 § 7, 5 Stat. 119. The case thus concerned the scope of invalidating prior art. It did not hold that an invalidating public use must necessarily "publicly disclose" an invention. Rather, the Court remarked that "some

SANHO CORP. v.                                                    13
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

inventions are by their very character only capable of being used where they cannot be seen or observed by the public eye," confirming that public use is a distinct concept from public disclosure. *Egbert*, 104 U.S. at 336.

Our cases also do not remotely suggest that the reasons for an expansive view of what constitutes commercial "public use" would apply with equal force to the exception from prior art for subject matter "publicly disclosed" in section 102(b)(2)(B). Indeed, our cases suggest the opposite. "The proper test for the public use prong of the [pre-AIA] statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005) (emphasis added). The latter commercial exploitation rationale is based on limiting the patentee's monopoly to the term provided by Congress. This concern has nothing to do with the issue here, whether the public has learned the relevant aspects of the invention and whether it is fair to treat a subsequent patent filing by another as prior art. *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (noting that "an inventor's commercial exploitation of [a] secret process squarely implicated the Supreme Court's rationale for creating the statutory bars" regardless of whether it was "'publicly' used" in a literal sense (discussing *Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516, 520 (2d Cir. 1946))).

We see no reason to incorporate the judicial interpretations of "public use" in section 102(a)(1) into the definition of "publicly disclosed" in section 102(b)(2)(B), and therefore reject Sanho's argument.

IV

Turning to the facts of this case, we think it is clear that the sale alleged by Sanho did not "publicly disclose" the relevant subject matter. Before the Board, Sanho relied on declarations from the inventor and from Sanho's

owner to establish a sale before Kuo's effective filing date. The inventor testified that, before Kuo's effective filing date, he communicated with Sanho's owner on the messaging service WeChat and "sent to Sanho via private courier a finished version of the [HyperDrive]." J.A. 6088, ¶ 25. He further testified that "Sanho placed an order for 12,000 gray [HyperDrives] and 3,000 silver [HyperDrives] which was accepted" days before Kuo's effective filing date. J.A. 6094, ¶ 26. Sanho's owner provided similar testimony, and added that Sanho "transmitt[ed] payment in the amount of $153,600" for the HyperDrives. J.A. 6105, ¶ 20. There was no testimony concerning whether the order was fulfilled, or what became of the 15,000 HyperDrive devices (if they were ever manufactured). Although there was no confidentiality or nondisclosure agreement, there was no teaching of the features of the invention to others beyond Sanho.

On these facts, we do not think it is a close question that the relevant subject matter of the invention, that is, the claimed circuitry allegedly described in Kuo, was "publicly disclosed" by the sale. The testimony establishes only that there was a private sale between two individuals arranged via private messages. There is no indication the sale disclosed the inventive subject matter to the public sufficiently for the exception to prior art in section 102(b)(2)(B) to apply. Nor does Sanho claim that it made a public disclosure of the invention through the HyperDrive sale, beyond its statutory construction arguments rejected above. We conclude that the sale of the HyperDrive here did not publicly disclose the subject matter relied on from Kuo as required by section 102(b)(2)(B). We therefore conclude that the Board did not err in determining that Kuo was prior art.

V

We have concluded that the sale at issue here did not publicly disclose the relevant subject matter under

SANHO CORP. v.                                                    15
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

section 102(b)(2)(B) because Sanho failed to show that the subject matter of the invention itself was publicly disclosed. We need not decide exactly what is necessary for demonstrating that a sale publicly disclosed the relevant subject matter, or whether to apply the prevailing standard for when a printed publication is sufficiently publicly accessible to qualify as prior art (see the discussion above of the legislative history). Here, it is sufficient to say that Sanho has made no showing that the sale at issue publicly disclosed the relevant aspects of the invention to the public. All that Sanho has shown is the existence of a private sale of the device. That is clearly not enough to qualify for the exception in section 102(b)(2)(B), even if we assume, *see supra* n.3, that the device did embody the subject matter of the invention.

## CONCLUSION

Because Sanho has failed to demonstrate that the private but non-confidential sale of a product allegedly embodying the invention resulted in the relevant subject matter being "publicly disclosed" under section 102(b)(2)(B), the Board did not err in treating the Kuo reference post-dating that sale as prior art.

## **AFFIRMED**

### COSTS

Costs to appellee.

APPENDIX A

## [35 U.S.C.] § 102. Conditions for patentability; novelty

(a) NOVELTY; PRIOR ART.—A person shall be entitled to a patent unless—

(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or

(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

(b) EXCEPTIONS.—

(1) DISCLOSURES MADE 1 YEAR OR LESS BEFORE THE EFFECTIVE FILING DATE OF THE CLAIMED INVENTION.—A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if—

(A) the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or

(B) the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor.

(2) DISCLOSURES APPEARING IN APPLICATIONS AND PATENTS.—A disclosure shall not be prior art to a claimed invention under subsection (a)(2) if—

SANHO CORP. v.
KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.

17

(A) the subject matter disclosed was obtained directly or indirectly from the inventor or a joint inventor;

(B) the subject matter disclosed had, before such subject matter was effectively filed under subsection (a)(2), been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or

(C) the subject matter disclosed and the claimed invention, not later than the effective filing date of the claimed invention, were owned by the same person or subject to an obligation of assignment to the same person. . . .